sonal property, Ulsh & Bashoar filed an exception.

The question for decision therefore is whether the whole amount of the plaintiff's secured claim, or only the balance not paid from the real estate which secured the claim, should share with the unsecured creditors in the distribution of the fund derived from the sale of the personal property. The referee decided that only the balance not paid from the real estate fund should participate with the common creditors in the distribution of the personal fund. In this decision the referee was correct.

Section 57h of the Bankruptcy Act (11 USCA § 93(h) provides that: "The value of securities held by secured creditors shall be determined by converting the same into money according to the terms of the agreement pursuant to which such securities were delivered to such creditors or by such creditors and the trustee, by agreement, arbitration, compromise, or litigation, as the court may direct, and the amount of such value shall be credited upon such claims, and a dividend shall be paid only on the unpaid balance."

"A creditor who holds security cannot receive dividends from the bankrupt estate, except on the unpaid balance of his claim after the value of the security has been deducted, as provided by Bankr. Act 1898, § 57h." In re Little (D. C.) 110 F. 621; see, also, In re Bash (D. C.) 245 F. 808.

The exception to the audit and order of distribution of the referee is dismissed, and the audit and order of distribution are affirmed.

**In re BYE.**

**No. 136782.**

District Court, E. D. New York.

June 6, 1930.

Bertha I. Pearl, of New York City, for petitioner.

GALSTON, District Judge.

The petitioner is a native American, born in the city of New York on October 12, 1885. She was continuously present in the United States until August 1, 1912. At that time she went to Montreal, Canada, to act as superintendent of the First Jewish Orphanage in that city, and continued so to act until February, 1916. It was her practice to return to New York at irregular intervals. She states that she maintained a residence with her mother, who lived in the city of New York during that time.

In February, 1916, she returned to New York, and married a naturalized Canadian citizen. His place of business was in Montreal. After her marriage, she continued her work in Montreal with the orphanage in an advisory capacity, and went there every few months or so. She sets forth in her affidavit that she considered her home to be with her mother in New York City, until the latter's death in January, 1923, at which time the petitioner made her home with her sister and niece.

It appears that several years after her marriage her husband purchased a home in Montreal, and her two children were born in Montreal, one in 1918, and the second in 1922. In October, 1924, she severed her connection with the orphange in Montreal and has not been out of the United States since. She has not seen her husband since that time. Her children live with her in New York City. On numerous trips back and forth to Canada during the period from 1912 to 1924 she was never examined, she avers, by the United States Immigration Service as to her right to enter the United States.

The district director of naturalization opposes her petition on the ground that she has not established her eligibility under the provisions of the Act of September 22, 1922, inasmuch as no certificate of arrival in the United States is produced by the petitioner.

The objection seems to be well founded. U. S. Code, title 8, § 369, 8 USCA § 369 (September 22, 1922, c. 411, § 4, 42 Stat. 1022), provides:

§ 369. *Naturalization of Women; Women Who Have Lost Citizenship by Marrying Aliens Eligible to Citizenship; Procedure.* A woman who, before September 22, 1922, has lost her United States citizenship by reason of her marriage to an alien eligible for citizenship, may be naturalized as provided in the preceding section. No certificate of arrival shall be required to be filed with her petition if during the continuance of the marital status she shall have resided within the United States. After her naturalization she shall have the same citizenship status as if her marriage had taken place after September 22, 1922."

The petitioner is certainly one who lost her United States citizenship before September 22, 1922, but it is quite obvious that during the continuance of her marital status she resided in Canada with her husband. Her activities in Canada and the birth of her children there are inconsistent with her statement that she at all times intended to maintain a residence with her mother in New York City. In such circumstances she should have obtained a certificate of arrival. U. S. v. Humphrey (C. C. A.) 29 F.(2d) 736.

Accordingly the petition must be denied.

**ANSALDI v. KENNEDY (two cases).**

Nos. 4258, 4259.

District Court, D. Massachusetts.

May 28, 1930.

George Locus, of Boston, Mass., for plaintiffs.

Joseph A. Dennison, of Boston, Mass., and Michael A. Sullivan, of Lawrence, Mass., for defendant.

MORTON, District Judge.

These are motions to dismiss for lack of jurisdiction appearing on the face of the record, and pleas in abatement raising the question of jurisdiction. The facts on which the pleas are to be determined were orally agreed in open court to be as follows: The two plaintiffs are minors, sons of Vito Ansaldi; they were born, and have always resided, in Massachusetts. The father has lived here many years but is not an American citizen; he is a subject of Italy. Since these actions were brought he has been appointed by the probate court guardian of the two minor plaintiffs and now appears as such guardian as well as prochein ami.

The only ground of jurisdiction asserted by the plaintiffs is that under the Constitution and laws of the United States the father, being an alien, has the right to sue in the federal court; and that his appearance as prochein ami, and later as guardian of the minor plaintiffs, confers jurisdiction in this court because of his alien status.

The powers and duties of a guardian are determined by the state law, Massachusetts General Laws, c. 201, § 37. It is well settled that under this statute a guardian has no title in his ward's estate. He cannot maintain a bill in equity in his own name to set aside a conveyance made by the ward, Lombard v. Morse, 155 Mass. 136, 29 N. E. 205, 14 L. R. A. 273, nor an action in his own name to recover property belonging to his ward, Mee v. Fay, 190 Mass. 40, 76 N. E. 229. New York Evening Post Co. v. Chaloner (C. C. A.) 265 F. 204, at page 213, relied on by the plaintiffs, depends upon the New York law as to guardians, which in this respect differs from that of Massachusetts as is pointed out in Lombard v. Morse. See, too, Sandeen v. Tschider (C. C. A.) 205 F. 252.

This being so, it is the citizenship of the ward, not that of the prochein ami or of the